**Stacey LARKINS, Petitioner–Appellant,**

v.

**Victor T. HERBERT, Superintendent, Shawangunk Correctional Facility, Respondent–Appellee.**

**No. 05–1904.**

United States Court of Appeals, Second Circuit.

Jan. 27, 2006.

Arthur H. Hopkirk, The Legal Aid Society, Criminal Appeals Bureau, New York, NY, for Appellant.

Keith Dolan, Assistant District Attorney (Charles J. Hynes, District Attorney for Kings County, Leonard Joblove, Amy Appelbaum, Monique Ferrell, Assistant District Attorneys, on the brief), Office of the District Attorney for Kings County, Brooklyn, NY, for Appellee.

PRESENT: RALPH K. WINTER, JOSÉ A. CABRANES and ROBERT D. SACK, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **AFFIRMED.**

Petitioner Stacey Larkins appeals from a March 18, 2005 judgment of the District Court dismissing his petition for a writ of habeas corpus. He is imprisoned pursuant to a May 20, 1997 New York state court conviction, following a jury trial in the Kings County Supreme Court, for Murder in the First Degree, N.Y. Penal Law § 125.27(1)(a)(vii) (intentional killing during a second-degree burglary).[1]

---

1. The New York murder statute provides, in pertinent part, that a person is guilty of first-degree murder when

   [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and ... the victim was killed while the defendant was in the course of committing ... burglary in the ... second degree[.]

   N.Y. Penal Law § 125.27(1)(a)(vii).

We assume the parties' familiarity with the underlying facts and procedural history.

Larkins alleges, as he did before the District Court, that (1) the state court trial judge gave erroneous instructions to the jury; (2) this error prejudiced Larkins; (3) trial counsel provided ineffective assistance by failing to object to the jury charge; (4) Larkins's counsel on direct appeal provided ineffective assistance by failing to raise trial counsel's alleged ineffective assistance. Because we hold that trial counsel's alleged constitutionally ineffective assistance, if it existed at all, was harmless error, Larkins's claim must fail.

It is not disputed that Larkins intentionally killed his victim, Alicia Lawrie, who was the romantic partner of Leona McCoy, a former romantic partner of Larkins and the mother of his daughter. Laying in wait outside the McCoy/Lawrie home, Larkins saw Lawrie take the couple's two dogs out for a walk. One of the dogs was a "pit bull" the couple had acquired as protection against Larkins, who had assaulted McCoy before and had objected to her relationship with Lawrie. Larkins forced his way into the apartment, pushing past McCoy, whom he then assaulted by shocking her with an electronic stun gun and pistol-whipping her. When Lawrie returned home, Larkins shot her fatally in the head; he then shot the pit bull to death. He subsequently told a police detective, "I did a homicide."

Petitioner argues that the trial judge's charge to the jury would impermissibly have allowed the jury to find (1) that Larkins committed second-degree burglary[2] by forcing his way into the McCoy Lawrie apartment with the intent to kill Lawrie (and with *no other criminal intent*) and (2) that because Larkins intentionally killed Lawrie during the burglary, he committed first-degree murder. Petitioner is correct that such a finding is prohibited by a New York Court of Appeals decision rendered after petitioner's trial. *See People v. Cahill*, 2 N.Y.3d 14, 62–69, 777 N.Y.S.2d 332, 809 N.E.2d 561 (2003) ("As a matter of statutory interpretation, we conclude that the conviction cannot stand because the burglary carried no intent other than to commit the murder."). Under *Cahill*, first-degree murder charged under Section 125.27(1)(a)(vii) of the Penal Law can be predicated on a burglary only if a defendant intends to commit a crime *separate from the charged homicide* when he unlawfully enters or remains in the location of the burglary. *Cahill*, 809 N.E.2d 561, 777 N.Y.S.2d 332, 2 N.Y.3d at 62–69.[3]

Judge Weinstein correctly found that the trial "evidence demonstrated overwhelmingly that petitioner illegally forced his way into the McCoy/Lawrie apartment not only with the intent to kill Lawrie (which he did), but also to assault and

---

2. One is guilty of burglary in the second degree when

> he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and ... [i]n effecting entry or while in the building or in immediate flight therefrom, he ... [c]auses physical injury to any person who is not a participant in the crime....

N.Y. Penal Law § 140.25.

3. It does not necessarily follow from *Cahill* that the trial judge erred in not instructing the

jury about this subtle doctrine. As we discuss below, overwhelming evidence supported the finding that Larkins intended when entering the McCoy/Lawrie apartment to commit a crime other than Lawrie's murder. Because we conclude that the jury would almost certainly have found petitioner guilty of first-degree murder even had the trial judge provided the jury with the instruction petitioner now claims he was entitled to, we need not reach the underlying question of the alleged improper jury charge.

torture McCoy while he awaited the return of Lawrie." Therefore, "the charge error, if it existed, ... would not have made a difference in the result." We therefore conclude that trial counsel's failure to object to the jury instruction or seek an instruction on the issue later addressed in *Cahill* does not satisfy the test established by the Supreme Court for constitutionally deficient counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[4] Among other evidence supporting a finding that petitioner intended, while forcing his way past McCoy, to commit a crime in the McCoy/Lawrie apartment other than Lawrie's murder, the government showed at trial that petitioner (1) brought an electronic stun gun into the apartment,[5] (2) used the stun gun to shock McCoy, (3) assaulted McCoy by pistol-whipping her,[6] and (4) shot the couple's pit bull dead.[7] We conclude that had the jury received the charge petitioner now asserts it should have, it would have convicted him of the same offense it found him to have committed in the absence of the instruction. Trial counsel's error, if any, was therefore harmless and did not constitute "a breakdown in the adversary process that renders the [trial's] result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Accordingly, the alleged error cannot justify the vacating of Larkins's conviction.

\*    \*    \*    \*    \*    \*

We have considered all of petitioner's arguments and find them without merit. The judgment of the District Court is **AFFIRMED**.

---

4. The Supreme Court in *Strickland* elucidated a two-part test, requiring both serious error and actual prejudice to overturn a conviction.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

> *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

5. Larkins's mere possession of the stun gun constituted criminal possession of a weapon in the fourth degree. *See* N.Y. Penal Law § 265.01(1) ("A person is guilty of criminal possession of a weapon in the fourth degree when ... [h]e possesses any ... electronic stun gun...."). Larkins can hardly argue that he did not intend to possess the stun gun while inside the apartment.

6. Because Larkins knew upon entry that McCoy was inside the apartment—after all, he pushed past her to gain entry—it is difficult to imagine how he could have intended to lay in wait to murder her lover without committing some crime to subdue her.

7. Under N.Y. Agriculture & Markets Law § 353, a person commits a misdemeanor when he "unjustifiably injures ... or kills any animal." Larkins had seen Lawrie walk out with the dogs, one of which was a pit bull acquired for the purpose of defending McCoy and Lawrie from Larkins, and he must have expected her to return with them. Because it is not justifiable to injure an animal to further the murder of its owner, any intent Larkins had upon entry to injure the dog constitutes intent to commit a crime in addition to the murder.